The following is a presentation of the TGS-Nopec Geophysical Service, Inc. v. TGS-Nopec I think they know they can leave. Yeah, they know. The next case for today is 2015-20706, Geophysical Service, Inc. v. TGS-Nopec Geophysical Company. You may proceed with your argument. Good morning, Your Honors. Joel Rothman, on behalf of Geophysical Services, Inc., and with me in the courtroom is the President of Geophysical Services, Inc., Paul Einerson. May it please the Court, I wanted to begin in this copyright infringement case by updating the Court on developments that have occurred since the district court's decision and also most recently since briefing has been closed. You updated us yesterday in a 28-J letter about the companion case and then about the appellate court in Canada. Yes. Why wasn't that filed earlier in time? I spent the weekend discovering that stuff, and opposing counsel has had no chance to respond. Why would that 28-J letter come in yesterday? I apologize, Your Honor, for not filing it. Those are very substantial factual developments. The decision by Judge Gray-Miller is an important factual development. And the fact that the Canadian court is going to be hearing this case in November. The appeal of that case is going to be heard in November, yes, Your Honor. All right. What's the issue before that court? Before the Canadian court? The issue is the appeal of Judge Eidvig's decision, which found, first, that GSI's works are copyrightable authorship under the Canadian Copyright Act, entitled to protection by copyright. And, second, Judge Eidvig's decision that the statutory scheme created a compulsory license for the copying and distribution of those works. Does that determine the lawfulness of the State's release of the seismic information? It would determine the lawfulness of the Petroleum Board's release of the seismic data. But it doesn't determine the issue in this case, which is the importation of copies. Well, it would if the court says Eidvig was wrong. It's not a confiscation. It's an implied license, as I thought Judge Rosenthal originally said. Because if it were an implied license, the first sale likely, doctrine likely, would mean you lose. But if the court says it is a confiscation, then, at least according to Nimmer and your reply brief, it's a really tough question, after Kurt's saying, as to whether or not there would have been a first sale where your client exhausted the right to control the item. Do you see my observation? I do see your observation, Your Honor. And if first sale is analyzed correctly in a non-geographical manner, as Kurt's saying required, then the first sale in this case needs to be determined under U.S. law. And under U.S. law, not under Canadian law, but under U.S. law, if there was no authority to make that copy to begin with, if there was no consent or authorization by the company. This case is, example, pirated. Clearly, owner has no way to control that. Opposite end of the spectrum, in which your opponent would have full protection, would be if you sold it to someone in Canada and then it's imported. What we've got here is implied license. I think arguably they're protected. Or confiscation by the State, where maybe it is caveat emptor and your opposing client would have — would possibly have an infringement case. So it's really important whether IDFICS dicta at the end that this is a compulsory licensing regime, whether it's Canadian — analyzed under Canadian law or American law. That's a really important question of foreign law. Well, it is an important question of foreign law. And we did raise that in the district court. And as this court has held numerous times, foreign law is a question of fact. And we said that the court could not decide foreign law a question of fact on a 12B6 motion without converting it to a Rule 56 motion and providing the parties with notice. But the court went ahead and decided factual issues in the first instance. Then — Well, the Deepwater Horizon case that they cite, which you probably read and I was on the panel of, dealt with foreign law according to 44.1, that a district judge will be the one who assesses foreign law. I'm suggesting to you right now the foreign law may look like it's in your favor. If IDFICS is right, it's a confiscation. So I would think you would want us to decide foreign law as a matter of law. Well, and the state of the law as it exists right now is admittedly one where we have a recognition of the copyright. But Judge IDFICS' decision that the Canada legislative scheme regarding the deposit of these seismic works essentially trumps copyright. And that is not a decision that comports with U.S. law. And — Yet your client years ago knowingly entered this regulatory regime. I mean, I know you dispute that, but it's a little hard when I look at your statements to Judge Rosenthal in district court. She asks, did anybody misunderstand that under the law after 10 years confidentiality would be gone? Your answer, I don't necessarily that — I don't know necessarily that they misunderstood. And, Your Honor, there was throughout an understanding that the law would be followed, and yet what we've discovered in the last three years is that the law wasn't followed, that these — this seismic material was distributed even within that period. But you knew that. Oh. Even within the period, yes, Your Honor. In fact — Within — before 10 years? Yes, even before 10 years. That's what you alleged? And we were only just discovering this now, that within that period, it turns out that even when the boards were saying to my client that there was no distribution, in fact, there was distribution. Are you — Sorry. Are you pursuing a law, American law here or Canadian law? Is this a copyright on the U.S. copyright law or not? It is under U.S. copyright law. It is a violation of the distribution right under 106 of the Act as applied to importation under 602A. Okay. And then my question, what's the relevance of the lawfulness of the transfer in Canada here? Well, we don't think there is a relevance unless it — the transfer turns out to be in compliance with U.S. law because then you do have a first sale defense, which, by the way, is a defense subject to factual showing. In the Kurtzeng cases, that was — those were summary judgment, not 12B6 like we have here. But — Sorry, Your Honor. I have a question. Why does it matter that the GSI works were obtained in a manner permitted by Canadian law when Section 109 of the Copyright Act says the first sale doctrine is lawfully made under this title? Right. It just — it's — I think maybe the Canadian law going in your favor now is sort of a backup argument if we reject the textualist argument under the Copyright Act. Am I wrong on that? And it is. There are several reasons why. The question under U.S. copyright law — I think that's what you're saying — is whether or not this transfer into the United States was simply the act of a pirate or — what application of — what I'm trying to get the handle on is why — is the reach of the consequence of saying that this particular seismic data is gained in a U.S. copyright protection. And that's what's at issue. It's the law — our law of copyright. And now what you're arguing is that — I think that's your argument. And I'm not — I'm confused as to exactly what effect this Canadian determination is going to have upon that determination of the importation or first sale doctrine. Well, the copyright — the U.S. Copyright Act applies to these works in the same way that the Canadian Copyright Act applies to it. Right. But it's a geographical limitation. Now, it's — there's some — Except Canada's parliament said instead of 50 years, your client only gets 10 years. Right. And he has better protection in the U.S. because the U.S. Copyright Act is longer. But there are certain basic rights under the Berne Convention both countries are members of. And he can take advantage of his copyright rights here in the U.S. as well. And under the U.S. Copyright Act, he is entitled to — But under your regime, you take advantage of the Canadian copyright law for the first 10 years, but you were protected under the American copyright law and you maintained throughout that same 10-year period. So you had dual protection. Is that your argument? Yes. And I'm not sure if we're mixing — when we say 10 years, I'm not sure if we're mixing the confidentiality protection that Judge Higginson referred to earlier, which was under the legislation for the petroleum boards with the duration of copyright, which is a different issue. I actually don't know what the duration of copyright is under Canadian law. I'm not as well-versed in the Act. Under U.S. law, it's the life of the author, plus depending on the author, anywhere from 70 to 100 years. So — but, Your Honor, it's copyright protected, just like the textbooks in the Wiley case were copyright protected. But the difference between the cases is that those textbooks were lawfully copied, reproduced, manufactured abroad. And Wiley was — agreed with that. Here, GSI never agreed to allow the petroleum board to give the seismic lines to a copy service and the copy service to make photocopies of it. What about that — your statement to Judge Rosenfeld? I mean, that to me is the question. I may be oversimplifying it. It's, did your client put it into the stream of commerce? No. Not when pirated, not if confiscated. Yes, if an implied license. And then when she asks you point-blank, you know, did they understand that it would be disclosed, you would lose confidentiality. You say, I don't know necessarily, they misunderstood. It seems like your client said, I want to be able to do the seismic lines offshore, and I know what the law is, and in 10 years, I lose my protection. But, Your Honor, we need to make a clear distinction when we're talking about 106 rights under the U.S. and what we're talking about. Disclosed, okay, is very different from copying. Right? But you mean they could have gone there. Exactly. And this is — think of it like a library, Your Honor. If it was okay for us to go into the library and reproduce any number of copies of any of the books there without the permission of the publisher or the author, then copyright, the rights in 106, would cease to exist. These are the critical rights. But that seems to cut against you. If you look at the Canadian regulatory body that had control of this for 10 years only, then they essentially are operating as a library, and they're open to the public at the end of 10 years under Canadian law. And it may be — So then I don't know what the relevance of that — Well, it is relevant because, Your Honor, TGS in Houston, Texas, okay, requested and received copies of my client's works shipped to them here. It's a library. Checked it out. But it checked it out in the United States. And that's the problem. If they had taken it in Canada, then this wouldn't be the same. But it imported it into the United States. Yes, and we wouldn't be here in a case if the issue was somebody from TGS going to St. Louis, the Petroleum Board, and saying, I'd like to look at seismic line number 105. I mean, this is really getting into the regulatory laws of Canada. Is that an issue before the November court, whether or not going into the library looking is legally distinct under their regulatory regime from going to the library and making a photocopy? I believe that it is. You think it's an issue? It may be an issue. But the point is for this case that regardless of whether the law in Canada allowed this copying or whether the Copyright Act is sacrosanct and would not be trumped by these statutes, the copies were made by a copy service. They were imported here in the U.S. And they crossed the border. And it was not GSI's authority to do that. We didn't give anybody consent to it. When in the record, just because your time is running out, when in the record did you assert this is your direct infringement claim? Oh, record site. Record site, Your Honor. Or just the motion we can find. I mean, what point? You don't have to give me a record site. I mean, it's in the complaint, Your Honor. It alleges in the complaint that the works were imported. In paragraph 35, it says the ATIA response reflects that on or about April 9, 1999, CNLOPB copied and distributed the GSI works to TGSN by courier in Houston, Texas. Right. And so the Miller case, the statute of limitations is not applicable for the same reason it was not in that case on reconsideration? Right, because we only found out about this at the time of the ATIA response, which is attached to the complaint and therefore made a portion thereof. I see my time is up. May I have a question? Yes, Your Honor. I understand that you factually discussed that it was copied and sent by courier. But I'm concerned about whether you pleaded infringement by importation specifically or is it your position that you don't need to separately plead infringement by illegal importation? In fact, you're right in that, Your Honor, we don't use the word import or importation in the complaint. However, there has been no decision that I found that holds that that needs to be pled separately, that there is a separate claim. In fact, what 602a says is that importation is just another type of distribution. It's a violation of a 106 right, actionable under 501. Not only that, but we've cited to you in our brief a decision of a district court in the Southern District of New York, a well-known copyright knowledgeable court, that says that importation does not need to be separately pled. So that was a tremendous surprise to me when I saw it. And also, I would say that, again, with apologies for only notifying you just recently of this, that Judge Gray-Miller indicated that mailing copies to the United States sufficiently crosses the border such that U.S. copyright law should apply. So three reasons at least. Thank you very much, Your Honors. I appreciate your time. Thank you. May it please the Court. I'm Melanie Roeder, and I'm representing TGS, NOPEG Geophysical Company, in this appeal. I'd like to start, Judge Higginson, where you began your questions to my opposing party. It is not clear from Kurtzing, the Supreme Court's holding in Kurtzing, that U.S. law applies to this dispute and whether the copy was lawfully made in the U.S. In fact, there's a very clear reading of Kurtzing that suggests that Canadian law does apply to that. In Kurtzing, the U.S. Supreme Court said that copies lawfully made abroad are protected by the First Sale Doctrine. The Court went on to say there was no geographical limitations to the First Sale Doctrine. But taking a step back, the Court did, Judge Elrod, look at your concerned language where it says, under this title. And the Court said that means in compliance with and in accordance with U.S. law. It didn't say under U.S. law as it's applied. And the Court said that that relates to the concern, which is throughout our Copyright Act, which is against piracy. And so what I believe and what our position is, is the Court is saying you apply the law of the local forum if that is similar to consistent with U.S. law, which Canada is. There's no issues of piracy here. But we're not talking about making the copy. We're talking about sending a copy into the United States, aren't we? Well, before we can send the copy into the United States, we have to make the copy. Right. But even if that was okay, sending it into the United States is the improper distribution under U.S. law. Isn't that what your opposing counsel argues? That is what my opposing counsel argues. But it's clear from Curt's saying, if that copy was lawfully made, then there is no illegal importation. If the copy was lawfully made, then there is no — if the owner of a particular copy under 109 makes a copy and distributes it, that is not a violation. The underlying theory that the owner has put it into the stream of commerce. Yes. And that first — because it's called the first sale doctrine, that first sale is what exhausts their — Well, the difficulty on this little aspect that everybody is focusing on in the case, direct infringement, is that Curt's saying comes down in 2013, right? Yes. And it doesn't come up in the hearing at all. No. In your — didn't. No. And Judge Rosenthal only addresses it in the penultimate sentence, one sentence. But we do have scholars like Nimmer in the reply brief pointing out this very acute, narrow little wedge of difficulty post-Curt's saying, which is whether or not first sale would protect your client when the, quote, sale, the transfer, was not a pirating in a private sector context, but a confiscation. And lo and behold, Eidvig has now said that it was a confiscation that supplanted copyright protection. So we're in a wonderfully scholarly moment that very little direction exists. Would you dispute that the use of the word confiscation to describe what happened here could be determinative? I do dispute that, Your Honor. And I dispute that because Itzvik's holding in the Alberta court was first and foremost that Canada's regulatory regime is valid, that it is lawful, and that it overrides the Copyright Act. So that alone says that by participating in this regulatory regime, you have let your copyright take a backseat to this disclosure law. Let me put in right there this quote from the opinion of the court itself. It said, copyright works as long as their manufacturer met the requirements of American Copyright Act law. In particular, the doctrine would apply whereas here, copies are manufactured abroad with the permission of the copyright owner. My question is, then, having participated in the regime, you are, it seems to me that that speaks to the permission of the copyright owner under American law that we're talking about here for what has transpired. Do you follow what I'm saying? I do follow what you're saying, Judge Higginbotham. And I would respond in two ways. First of all, that is true under American law. If you consent to an act and put your copyright into that stream of commerce, then that is unlawful. Well, we are proceeding under American law. I would argue otherwise that we are proceeding under Canadian law. I'm not sure how you proceed to do otherwise. I thought that the whole foundation of this is that American law applies across, around the world. You create American copyright law. It has no geographical limitation. And so what we have here is copyrighted law, and you're proceeding under American copyright law. And the Supreme Court, Justice Breyer's opinion is explicit that so long as a manufacturer met the requirements of American copyright law, in particular, the doctrine would apply, whereas here, copies are manufactured abroad with the permission of the copyright owner. And so what I'm suggesting to you is that the copyright owner here, by participating in the Canadian system here, has given permission to the copyright owner. You can call it applied license, whatever you want to see. But I go further than a license. I wanted to question you a little bit about what do you do with this language of opinion and how does it map on here? Our position is that Kurtzing is not clear on whether you apply Canadian law or U.S. law to the question of whether the copy was lawfully made abroad, which is the holding of Kurtzing. Our reading is that if it's consistent, if the law of the local forum is consistent with U.S. law, then you would apply the law of the local forum. And the reason that I say that and why I think it's consistent— I'm with you. I'm with you to that point, but my question is a little different. I'm saying that without averting to Canadian law at all, I'm saying that under American common law, that the court says, whereas here copies are manufactured abroad, which these were, with the permission of the copyright owner. So you have the copyright owner here. We're talking about—the question is, is the permission that the copyright owner here has given permission, effectively, the argument would be, if one possibly knew that, by what it's done here in seeking the benefits of the Canadian law, part of which is that in 10 years, it's released to the public. Now, one can challenge that, and that goes to the relevance of this proceedings out there. So I would agree that even under U.S. law, if U.S. law applies to this analysis, I will agree with you that these copies were lawfully made under U.S. law. For the reason, one, that you just suggested, by participating in the regulatory regime—and I want to be clear, in their pleadings, they have admitted that they were aware of the regulatory regime when they submitted it and knew of the disclosure laws. So I would argue that they have authorized the disclosure of this, and that makes 106—it means that they've authorized their exclusive right to distribute. So I'd have to— I'd think I'd think makes difficult findings at the end, saying they were forced and they didn't consent. What's—well, I guess here's my question. Will the court in November that's deciding this almost for sure decide if it was an implied permission by playing by the rules, entering into the game, or will—is the court going to possibly say, no, it was a confiscation, they never consented, it was forced from them? Is that an issue that will be decided? Any way to know? I don't know, Your Honor, fully. I don't know. I do understand that what will be decided is whether the regulatory regime overrides the Copyright Act, which is what I think is important here from that decision. So wait? I don't think we need to wait, Your Honor, and I'll tell you why. We don't need to wait because other courts in Canada have ruled on this issue and have found that by participating in the regulatory regimes that GSI participated, knowing fully well the results of that, and so they, as Judge Higginbotham just said, authorized the disclosure of this. Those courts have gone on to say that disclosure means copying and releasing. So under those courts alone, without considering Alberta, we have enough authority to go forward here on— Judge Rosenthal hasn't spelled that out. That's your description of Canadian law? Well, Judge Rosenthal did hold that the First Sale Doctrine applies. She walked through all of the cases from the Canadian courts— There's further description that under Canadian law, the copying is part and parcel of the non-confidentiality? Yes, she did. She walked through all of the Canadian regulations, the Atlantic Accord, the Implementation Act, and the Operations Regulations, and found that by their participation in her first opinion She didn't do the implied license, but in her second opinion, she found that by participating in this, that the First Sale Doctrine did apply and barred their importation claims. That's a one-sentence conclusion. Is your client harmed if we wait? My client is not harmed if we wait from the general sense that where we believe this is headed. I do think that given the other cases that GSI has now filed in the United States, there is harm that results from postponing a ruling from this court. And while we're on that topic, I would like to address Judge Miller's opinion in the District Court in the ConocoPhillips case. In the ConocoPhillips case, ConocoPhillips did not raise First Sale Doctrine or Active State Doctrine in defense of direct infringement. So it is not comparing apples to apples in the briefing to say that Judge Miller didn't find in favor of those. And I would like to add to that that Judge Miller did find that the Active State Doctrine bars the contributory infringement claim. And that is a finding that GSI has said that they don't challenge, that Active State Doctrine bars the contributory infringement claim. And I'd like to go back to that point as well. Before you leave that, it would help me still if you intend to file a responsive 28J letter. We do intend to, Your Honor. But going back to where we were headed with the unlawful, whether the copies were made lawfully or unlawfully in Canada. You're going to do that soon? I'm sorry? 28J? Yes, we will do that in the next two days if that's fine. Sure. Okay. End of the week. Okay. We will absolutely file that by the end of the week. The Active State Doctrine bars this Court from finding that acts of a foreign sovereign on foreign soil are invalid. And that's what this Court would have to do to find that the First Sale Doctrine does not apply, or to find the contributory infringement. Because it would require this Court to find that GSI directly— —to an importation moment where the direct infringement is allegedly your clients importing it from this third-party copier. Whether what the Petroleum Board did was lawful or not is only relevant in as much as they put it into the stream of converse by getting it to them. Well, so for there to be an illegal importation under 109—or I'm sorry, under 602, there has to—there can't have been a lawful copy. So you have to, by definition, find that that copy was unlawfully made or else we went on First Sale Doctrine. This title gets back to the question of unlawful under whose law. And it seems to me Eidvig said it violated copyright law in Canada. And, I mean, extreme example. Let's say you've got a country, Argentina or someone, that does just straight confiscate property. And in that property is your client's intellectual rights. And then that makes its way and is imported by a competitor. That, to me, would seem like it's a pirating example. It's an equivalent of pirating. I would agree with that, Your Honor. But I would agree that the Supreme Court's language in its holding and Kurt saying that it has to be in compliance with or in accordance with would prevent that from happening. It would say the First Sale Doctrine doesn't apply here because you're not acting as the standard of our laws are set out. We don't allow for piracy. So we won't allow you the protection of the First Sale Doctrine. And what U.S. law allows for a compulsory license to—forces the surrender of the property, the protection? What's the best case? So the Copyright Act does allow for compulsory license. But only in a context unrelated to copies. So the U.S. Copyright Act does not provide for compulsory license under the act itself. And that was Nimmer's point, which they cited too. But that, in my opinion, is dicta of that Alberta case because the holding in that case was these regulations are valid and they override the Copyright Act. Okay. Then can we talk about the New Zealand example? Nimmer's example. I don't understand why that's not applicable. So I'd like to put the Nimmer examples into context. In Zimmer's treatise on copyright, he goes through all of the different readings of Kertzing. He talks about the hyper-technical reading of Kertzing. And in the hyper-technical reading of Kertzing, that would actually not address Judge Higginson's concern because that would allow pirated goods into the United States. And then he goes through the local, where you look to the local law of the forum, where the act of infringement allegedly occurred. And then he goes through the scenario under which you look to American law. So he didn't say that this is what I think Kertzing held. He just walked through the different concerns raised by the Kertzing court. But when he did that, he looked through American law, and he said that the New Zealand phone record thing wouldn't work. And if we do it that way, why doesn't your client lose? So I recognize what Nimmer said in this context. If U.S. law does not recognize a compulsory license, would we win? I believe that's your question. And my response to that is I think we would win under different reasons. The Alberta court is not binding on this court. In fact, as I mentioned, there's three other courts in Canada who have not held that it was a compulsory license. Right, but if we agree that if we say it's a compulsory license and we follow American law, then do you lose? If assuming that you found that U.S. law applied under Kertzing and that this was a compulsory license, then we would have a difficult argument to make. Although I would argue if you're applying U.S. law, if that's the standard, if you're applying U.S. law, then you wouldn't even be considering a compulsory license. You might consider whether it was an implied license or some other basis. But I don't think you – if you're applying U.S. law, I don't think you would find – Did Rosenthal retreat from her conclusion that it was an implied license? She did not retreat from her opinion. She did vacate that opinion because it had not been briefed before she made the finding. So she vacated that opinion. Why doesn't the question of the confiscation and so forth really sort of beg the question? If a particular person is situated in a regime, American law says as long as you have permission. And the notion that a Canadian company is not consenting because under Canadian law where you are operating requires this particular scope of it. In other words, the notion of confiscation is an unlawful taking that's there. And you have this abstract concept of where you have a right under American law that the Canadian company is confiscating, in effect. But that really – if you ask it in terms of the permission that's granted, you really are – one, it's not an active state problem because you have – you're not challenging the sovereign's law. You're applying the sovereign's law. And the sovereign – it's the law of the sovereign that's there. These individuals are acting in compliance with the local law. It was created under those insofar as they have any rights in Canada. It was created under those laws. The awkwardness of this stems from the Supreme Court's effort, mighty effort, to operate within a statutory language that's very restrictive and deal in a common law-like mode with the problems of piracy and the new digital age. And with all respect to NIMR, you can find all kinds of inconsistencies and holes and pockets and so forth. But our problem is that's fine, but we have to find some practical solution to what we have. And I'm not sure I'm getting the practical solution to it. In response, I would like to— Can you tell me in a straightforward way exactly what you want this Court to do? I think I understand the other side. I know what outcome you want. But how do you – how would you help us get there? I would help you get there, Your Honor, by saying that the first cell doctrine applies in this case to bar infringing importation into the United States. It does so under Canadian law, and that is clear from all of the courts in Canada. But it also does so from U.S. law, and I think we've talked about that. But for this Court to find otherwise would require the Court to violate the act-of-state doctrine. I understand Judge Higginson's concern about the importation, but this whole case, every claim and every defense in this case, comes down to whether the copies were lawfully made in Canada. And to find that they weren't, regardless of what law you apply, requires you to find that a foreign sovereign had an invalid act on foreign soil, and that violates the act-of-state doctrine. Why does it say a whole host of copies, this is Nimmer, could be lawfully made in their place of manufacture under local copyright law? That's not finding that it violates— But nonetheless, equally fall out of compliance with Title 17 had 17 been applicable there. All of these goods accordingly fall equally outside the protection of Kersing's ruling. That—it's not—it's still saying that that's valid in that country. So, Your Honor, to say that that's valid in Canada would say that the first sale doctrine doesn't apply. But to say that we now illegally imported it means, by definition, that they illegally exported it. That's the holding of the light cubes case, and so you're saying that the Canadian government still acted in violation of the law. So, Nimmer's just wrong. No, no, I don't believe Nimmer's wrong. He's just saying we don't get the protection of the first sale doctrine, but it still means that the actual importation claim still requires an invalid act. Why is it fine for you under first sale? Because I believe that's not the proper reading of Kersing in the application of the first sale doctrine. And I would point out again that that's just one holding, and that's just one scenario that Kersing—I mean, that Nimmer raises in his treatise.  Thank you. Well, the Supreme Court's told us that the American copyright law does not have a geographical dimension to it, so it's a world-wide reach of a Scottish writer's book on his shelf, et cetera, et cetera. How do you get us out of that dilemma? Your Honor, when I was a teenager and I bought music, it came on a big vinyl disc called a record album, and there was a section in the record store that had a few records, and they were often in foreign languages, text like Japanese. It was the import section. And there was something about the import section that was—it was dangerous. It was—you know, there were more money, for one thing. You're a teenage boy. Right. And I didn't understand it then, but I understand it now, that those imports most likely were copies that were made without the copyright owner's permission and consent in a foreign country and then brought here. And that's what we're dealing with, except instead of dealing with music, we're dealing with another form similar to that, a sound recording that creates a map, because these things are projected under the earth. So it comes down to permission. And it does. Your argument then is that you knowingly entered the rules of the game. You permitted it knowing you had a 10-year span, but that's it, and therefore is your only answer, well, we permitted it only because we expected the library to be open in Canada, but we never permitted that there would be a copy and then an importation? That's what it comes down to? That is one argument. Your Honor, the copies here were made by a copy service, not by the Petroleum Board, so the idea that we're ruling on a Foreign Sovereigns Act is not a real issue in this case. The release of the information in the act, we're not stepping on that at all. You've given permission. Well, and what's interesting, Your Honors, is that, and this is in the briefing, it's entirely, it's not pirating. If it's conformity with the local law, you make this first sale. I mean, I don't. Right. And, Your Honor, then I ask you the question, why then, when the Petroleum Board releases this information, do they also release a notice to the company receiving it that what they're doing may violate intellectual property laws? Why, then, do they always inform? Well, but, Your Honor, the — There is Professor Nimmer when we need him. Well. And yet he's here, Your Honor. And he's given us — He's here.    He's here. He's here. He's here. He's here. He's here. I mean, this is a very brief, but — and here's the thing. Quality King and Kurtzang can't be squared if you read it the way that they urge. It's just not possible. The Supreme Court meant what it said, and it gave cogent examples of what happens when copies are made abroad without U.S. authority. And the import bin at the record store is an example from — Quality King itself acknowledges in its opinion that compulsory licenses of some sort — Of some sort. Right. That's the key. And is this — is this really a compulsory license? It's a license at — at, you know, by force, because there's no actual — even with compulsory licenses in this country, there's an actual license document. There are royalty payments, compelled, compulsory, compelled. And so here, what do we have? We have essentially judicial fiat. Now, I — I — you know, we can't — Judge Elrod asked your opposing counsel, what's value to weight? Do we know the Canadian court at a higher level is going to deal with this or not? We — we — first of all, we — I do know that the issue of this compulsory license is going to be squarely presented. I've read the briefs. So — so it is squarely presented to the appellate court in Alberta. That's number one. Number two, there is no Canadian decision to date that has found that GSI ever granted an implied license other — other than Eidsvig decision regarding this compulsory license. None exists. No Canadian court has ever ruled in the fashion that they're claiming it has. And what needs to happen is — Well, they said it is a — it is a — you did grant an implied license. Then what? Well, if there is a ruling from a Canadian court that there is this implied license, then that doesn't immunize the importation here, but it potentially becomes a defense. And it's a defense that needs to be addressed on the facts. My time is up. Thank you very much.